DECISION
{¶ 1} Relator, Wheeling-Pittsburgh Steel Corporation ("W-P Steel") filed this original action in mandamus seeking a writ compelling respondent, the Industrial Commission of Ohio ("commission"), to vacate its award to Kimberly Fadeley, the surviving spouse of Joseph W. Fadeley, for W-P Steel's violation of a specific safety requirement ("VSSR").
{¶ 2} Joseph Fadeley was a crane operator for W-P Steel. Apparently, on June 20, 1999, Fadeley exited his crane onto an elevated emergency runway and then fell to his death. There were no witnesses to the accident. At the time of the accident, there was a railing on only one side of the elevated runway.
{¶ 3} Generally, elevated runways must have railings on both sides. Ohio Adm. Code 4121:1-5-02(D)(1)(a). W-P Steel asserted that the runway in question qualified as a special purpose runway and that operating conditions necessitated the omission of guard rails on one side of the runway. Therefore, the railing could be omitted on one side pursuant to Ohio Adm. Code 4121:1-5-02(D)(4). Although the commission's staff hearing officer ("SHO") determined that the runway was a special purpose runway, it found that operating conditions did not necessitate the omission of a railing. Accordingly, the commission held that W-P Steel violated Ohio Adm. Code 4121:1-5-02(D)(1)(a).
{¶ 4} Pursuant to Loc.R. 12(M), of the Tenth District Court of Appeals, this matter was referred to a magistrate for further proceedings. The parties stipulated to the relevant evidence and submitted briefs. The magistrate then issued a decision, including findings of fact and conclusions of law. The magistrate determined that relator's request for a writ of mandamus should be denied. W-P Steel has filed objections to that decision, and counsel for Kimberly Fadeley and the commission have each filed briefs in response. The case is now before the court for a full, independent review.
{¶ 5} Ohio Adm. Code 4121:1-5-02(D) requires that "standard railings and toeboards" guard elevated runways. Standard railings are comprised of a top rail, an intermediate rail and a toeboard. Id. at (E). However, the railing may be omitted on one side of the runway if the runway qualifies under the special purpose exception set forth in Ohio Adm. Code 4121:1-5-02(D)(4). This provision provides that "runways used exclusively for special purposes * * * may have the railing on one side omitted where operating conditions necessitate such omission, provided the falling hazard is minimized by using a runway of not less than eighteen inches wide." Ohio Adm. Code 4121:1-5-02(D)(4).
{¶ 6} It is undisputed that the width of the emergency runway at issue in this case exceeded 18 inches. Furthermore, the SHO found that the runway was used exclusively for special purposes because it was only to be used when a crane operator had to quickly exit the crane in an emergency. However, the SHO found that the special purpose exception was inapplicable because operating conditions did not necessitate the omission of the railing on one side of the runway.
{¶ 7} The SHO reached this conclusion based upon W-P Steel's installation of a modified railing system (consisting of a single rail) with gates on the open side of the runway sometime subsequent to this industrial accident. Both the SHO and the magistrate reasoned that, because it was possible to install some form of protective railing on the runway and still allow for emergency access to the runway, operating conditions did not necessitate the complete omission of protective railing on the one side of the runway.
{¶ 8} Relator argues that the railing referred to in the special purposes exception is the standard railing otherwise required by Ohio Adm. Code 4121:1-5-02(D)(1)(a). Therefore, if operating conditions prevented the use of the standard railing, the special purpose exception applies and the standard railing may be omitted. Moreover, relator contends that, when the special purpose exception is applicable, no other provision of the administrative code requires the addition of any other railing on the open side of the runway.
{¶ 9} In accessing the meaning of the words "the railing" in the special purpose exception contained in Ohio Adm. Code 4121:1-5-02(D)(4), we must start with the premise that a VSSR award is in the nature of a penalty against the employer and safety requirements must be strictly construed in reviewing applications for such awards. State ex rel. Whitman v. Indus. Comm. (1936), 131 Ohio St. 375; State ex rel. Brilliant Electric Sign Co. v. Indus. Comm. (1979), 57 Ohio St.2d 51. All reasonable doubts concerning the interpretation of a safety requirement are to be construed in the employer's favor. State ex rel. Watson v. Indus. Comm. (1986), 29 Ohio App.3d 354, 358.
{¶ 10} Given this standard, we find that the reference to "the railing" in the special purposes exception contained in Ohio Adm. Code4121:1-5-02(D)(4) means the standard railing that would otherwise be required by Ohio Adm. Code 4121:1-5-02(D)(1)(a). Because a standard railing could not be installed on the runway without impeding the crane operator's access to the runway in the event of an emergency, the special purpose exception applies. Therefore, the standard railing could be omitted on one side of the runway. This is precisely what relator did.
{¶ 11} The fact that some non-standard railing was later installed on the runway is not evidence that the standard railing referred to in the regulation could have been used without seriously impeding the purpose of the runway — i.e., to provide crane operators quick access in the event of an emergency. The decision of the SHO and the magistrate's decision both recognize that the modified railing and gates installed after this industrial accident would not meet the requirement of a standard railing (because it consisted of only one rail) but, rather, was a "reasonable compromise" between no railing and the railing otherwise required by Ohio Adm. Code 4121:1-5-02(D)(1)(a).
{¶ 12} If the special purposes exception allows the employer to omit the standard railing on one side of the runway, there is no requirement that any other type of railing be placed on that side of the runway. Although both the SHO and the magistrate point to the "alternative protection" provision found in Ohio Adm. Code4121:1-5-02(D)(1)(b), that provision is inapplicable for a number of reasons. First, the alternative protection provision is permissive in that it allows an employer to use an alternative railing if the required standard railing would result in an impairment of the work being performed, and the alternative protection provides safety equivalent to or greater than that provided by the standard railing. Id. The provision does not require an alternative railing.
{¶ 13} Second, alternative protection is permitted only when the standard railing would result in an impairment of the work being performed. As relator notes, no work was performed on the runway. The runway was only to be used in an emergency situation, which is precisely why the SHO determined that it qualified as a special purpose runway.
{¶ 14} Third, when an alternative railing is utilized, it must provide safety equivalent to or greater than that provided by standard railing. As previously noted, the modified railing and gates installed subsequent to this industrial accident did not provide a level of safety equivalent to the standard railing. Rather, the modified railing was a reasonable compromise between no railing and the railing otherwise required by Ohio Adm. Code 4121:1-5-02(D)(1)(a).
{¶ 15} Lastly, nothing in Ohio Adm. Code 4121:1-5-02(D)(1)(b) suggests that alternative protection is required when the special purpose exception permits the omission of the standard railing on one side of an elevated runway. Therefore, for all of the reasons cited above, the alternative protection provision does not support the decision of the SHO or the decision of the magistrate.
{¶ 16} In conclusion, W-P Steel has shown an entitlement to a writ of mandamus. Because we find that the special purposes exception set forth in Ohio Adm. Code 4121:1-5-02(D)(4) applies, a VSSR award was improper. Therefore, we sustain the objections to the magistrate's decision, grant the requested writ of mandamus ordering the commission to vacate its VSSR award to respondent, Kimberly Fadeley, and order the commission to enter an order denying the VSSR award.
Objections sustained;
Writ of mandamus granted.
PETREE, J., concurs.
TYACK, P.J., dissents.